UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KAREN GALLAGHER,

       Plaintiff,     MEMORANDUM AND ORDER

 -against-         CV 04-3315 (LDW) (MLO)

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON,

       Defendant.
-------------------------------------------------------------X
APPEARANCES:

 FUSCO, BRANDENSTEIN & RADA, P.C.
 BY:  ABA HEIMAN, ESQ.
 Attorneys for Plaintiff
 180 Froehlich Farm Boulevard
 Woodbury, New York 11797

 CHORPENNING, GOOD, CARLET & GARRISON, ESQS.
 BY:  MICHAEL J. ZARETSKY and VIRGINIA T. SHEA, ESQS.
 Attorneys for Defendant
 645 Fifth Avenue – Suite 703
 New York, New York  10020

WEXLER, District Judge

 Plaintiff Karen Gallagher ("Gallagher') brings this action under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B), to recover benefits under the GreenPoint Bank Long-Term Disability Plan (the "Plan").  The Plan is funded by a Group Disability Income Policy (the "Policy") issued by defendant Liberty Life Assurance Company of Boston ("Liberty").  Liberty has agreed to assume liability for any benefits awarded.  Both Gallagher

and Liberty move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure ("FRCP").[1]

BACKGROUND

Gallagher worked at GreenPoint Bank ("GreenPoint") as a sales representative. Her duties included, but were not limited to, handling customer transactions at a teller window.

GreenPoint provided its employees, such as Gallagher, with short-term disability ("STD") and long-term disability ("LTD") benefits under the Policy. Pursuant to the Policy, a covered employee must meet minimum hourly requirements to be eligible for benefits, namely, 40 hours per week for LTD benefits and one hour per week for STD benefits. Moreover, for STD, "Disability" or "Disabled" under the Policy means the covered employee "as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of [her] Own Job." Similarly, for LTD, "Disability" or "Disabled" means the covered employee, "as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of [her] Own Occupation." The Policy also defines partial disability. Regarding LTD, "Partial Disability" or "Partially Disabled" means, among other things, the covered employee is able to "perform one or more, but not all, of the Material and Substantial Duties of [her] Own Occupation or Any Occupation" on a part-time basis as a result of sickness or injury. The phrase "Material and Substantial Duties," for LTD, means those "responsibilities that are normally required to perform the Covered Person's Own Occupation . . . and cannot be reasonably eliminated or modified."

---

[1] Gallagher purports to move under FRCP 52 for "judgment on the record." Because summary judgment is the appropriate vehicle for judicial determination of her motion, the Court treats Gallagher's motion as one for summary judgment under FRCP 56.

"Own Occupation," for LTD, means the covered employee's occupation "as it is normally performed in the national economy."

In May 2001, Gallagher was diagnosed with multiple sclerosis ("MS"). On July 23, 2002 Dr. Roy M. Shanon diagnosed Gallagher with "[r]elapsing/remitting MS with possible exacerbation of symptoms characterized by the sensation of disequilibrium." Nevertheless, she continued to work full time until August 14, 2002. On that date, she stopped working and took a 12-week leave of absence under the federal Family and Medical Leave Act ("FMLA") to adopt a child.[2] Gallagher returned to work on a part-time basis on November 14, 2002, without any stated medical opinion or recommendation regarding her ability to work. She continued to work until January 23, 2003, when her MS symptoms led her to visit Dr. Alan M. Bigman. She reportedly was having vision problems and instability and difficulty with coordination. In a Restrictions Form, dated a February 11, 2003, Dr. Bigman indicated that he advised Gallagher to cease work as of January 23, 2003, and he described her restrictions and limitations as "unable to work at this time."

Thereafter, Liberty approved Gallagher for STD benefits from January 24 through July 31, 2003. In approving the STD benefits, Liberty characterized Gallagher's occupation as a teller, which it described as "LIGHT/MED" work.

On October 1, 2003, Liberty denied Gallagher LTD benefits, asserting that she lacked eligibility for those benefits at the time she became disabled, i.e., January 23, 2003. Specifically, Liberty determined that Gallagher's LTD coverage had terminated on December 31, 2002 and

---

[2]Gallagher sought and was denied STD benefits in connection with her August 2002 FMLA leave. She did not appeal the denial of that claim.

that she was not eligible for LTD benefits as of January 23, 2003 because she was not working 40 hours per week at that time.

By counsel's letter dated February 3, 2004, Gallagher filed an administrative appeal of the denial and requested that Liberty amend her disability onset date to August 15, 2002, given Liberty's determination that she was not eligible for LTD benefits after December 31, 2002. Gallagher submitted additional records to Liberty regarding her MS. These records included treatment notes from Dr. Marc L. Gordon, a neurologist, dated May 5, 2001, October 12, 2001, May 21, 2002, and November 19, 2002, documenting a period of relapse and remission of her MS symptoms. As of November 19, 2002, Dr. Gordon wrote that her MS symptoms had worsened in July 2002, that she suffered "horizontal diplopia" (i.e., double vision along the same horizontal plane) one week prior, and that she currently complains of unsteadiness when she walks. Similarly, as of July 23, 2002, Dr. Shanon described Gallagher's MS symptoms as "recurrent dizziness and numbness and paresthesias in the extremities" and he noted her complaint that in the past three weeks she had "the sensation of disequilibrium, especially when she walks."

In evaluating Gallagher's claim, Liberty considered a job description form, dated February 13, 2003, completed by a GreenPoint branch manager. The branch manager listed Gallagher's duties as "handling client transactions at window" for six hours and "daily teller and branch [illegible]" for one hour, and described the physical requirements as three hours sitting and five hours standing. The one hour disparity between the duties and physical requirements is not explained.

In considering the job description, Liberty asked GreenPoint whether Gallagher could use a stool to sit "as needed." In response, GreenPoint informed Liberty in September 2003 that it provided a built-in stool at Gallagher's work station. On that basis, Liberty concluded that Gallagher could sit as needed during the workday, leading Liberty to determine that her occupation was "sedentary."

Liberty sent the file to a neurologist, Dr. Joseph J. Jares III, for review. Dr. Jares concurred that the medical records of Gallagher's treating doctors supported a diagnosis of MS, but he opined that "there is no data submitted that would indicate an inability of Ms. Gallagher to perform full-time in a sedentary fashion," and that Gallagher "was not unable to work" between November 14, 2002 and December 31, 2002.

By letter dated April 9, 2004, Liberty again denied Gallagher's claim for LTD benefits. In denying the claim, Liberty conceded that Gallagher remained eligible for LTD benefits during her FMLA leave from August 15, 2002 to November 13, 2002, because the Policy provides that an employee's coverage may be continued for an approved FMLA leave for "up to 12 weeks."[3] Liberty also conceded that Gallagher remained eligible for LTD benefits for the period from November 14, 2002 to December 31, 2002, even though she was not working full-time. In this respect, Liberty considered her on "intermittent leave," meaning she was treated as full-time status with the hours not worked considered intermittent leave. Liberty construed this status as a "Leave of Absence" under the Policy, thereby allowing Gallagher to remain covered for LTD benefits through December 31, 2002 – the end of the month following the month in which the

---

[3] The record indicates that the parties treated Gallagher's FMLA leave as ending on November 13, 2002, a three-month period rather than a 12-week period.

leave of absence began. Thus, Liberty determined that after December 31, 2002, Gallagher was required to work 40 hours per week to be eligible for LTD benefits; otherwise, she remained eligible for STD benefits only. Liberty determined that the record did not establish that Gallagher was either totally or partially disabled during the period of August 14, 2002 through December 31, 2002, and that her LTD coverage expired before she became disabled on January 23, 2003. Accordingly, it denied her claim for LTD benefits.

Gallagher commenced this action challenging Liberty's denial of her claim for LTD benefits.

## DISCUSSION

A. Standard of Review

Gallagher does not dispute that this Court must review Liberty's denial of benefits under the arbitrary and capricious standard of review, as the Plan confers discretionary authority on the plan fiduciary to determine eligibility under the Plan. *See Pagan v. NYNEX*, 52 F.3d 438, 441 (2d Cir. 1995). In applying this standard, the Court is limited to an evaluation of the evidence that was before Liberty at the time it made the decision to deny benefits. *See Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). Moreover, the Court may only reverse Liberty's final decision if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id*. at 1070. Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached . . . and . . . requires more than a scintilla but less than a preponderance." *Id.* at 1072. Moreover, a court may not

"substitute its judgment for that of the [plan administrator] to determine eligibility anew." *Pagan,* 52 F.3d at 442.

B.  Review of Liberty's Decision Denying LTD Benefits

Gallagher maintains that Liberty's decision to deny LTD benefits was arbitrary and capricious because Liberty refused to credit reliable evidence supporting Gallagher's claim, including the opinions of her treating doctors.  Gallagher alleges that she has been either "partially or totally disabled" under the Plan since August 15, 2002, a point in time when she was eligible to receive LTD benefits.  Gallagher relies on various medical reports used to support her administrative appeal.  These records consist of medical assessments from several of her treating doctors, including Drs. Shanon and Gordon, that are consistent with the undisputed diagnosis of relapsing/remitting MS.

Gallagher further maintains that Liberty's decision to deny LTD benefits was arbitrary and capricious because Liberty unreasonably assumed that Gallagher's occupation was "sedentary" and erroneously evaluated her claim on that assumption.  Liberty claims to have reasonably based this assumption on being advised by GreenPoint that a stool was placed at Gallagher's work station, which information came in response to Liberty's inquiry as to whether Gallagher could use a stool to sit "as needed."  Liberty argues that it was reasonable for it to conclude that Gallagher was permitted to work while seated, making her occupation "sedentary." Gallagher asserts that Liberty interpreted the branch manager's description of the occupation as a description that did not consider the stool, so that with the stool the occupation was sedentary. Gallagher further asserts that it is more reasonable to assume that the description included the stool, so that Gallagher would have to stand at least five hours per day notwithstanding the stool.

She argues that the bank teller position is considered "Light" work according to the United States Department of Labor's *Dictionary of Occupational Titles*, 4th edition, meaning "it requires walking or standing to a significant degree."

Upon consideration, the Court finds that, contrary to Gallagher's arguments, Liberty's decision to deny LTD benefits was not arbitrary and capricious. As Liberty argues, it reasonably determined that Gallagher was not totally or partially disabled at any time between the alleged onset date – August 15, 2002 – and the eligibility termination date of December 31, 2002, notwithstanding any alleged mistake in the classification of her occupation. None of Gallagher's treating doctors opined that the symptoms she was experiencing had any substantial affect on her ability to work during that period of time. Indeed, the first suggestion that Gallagher was disabled as early as August 2002 due to her MS was the February 3, 2004 letter from counsel appealing Liberty's denial. Counsel's request to amend her disability onset date to August 15, 2002 apparently came in response to Liberty's determination that Gallagher was not eligible for LTD benefits after December 31, 2002. However, there is no evidence that when she stopped working on August 14, 2002, she did so because of her medical condition. Rather, the record shows only that she took 12 weeks of FMLA leave to adopt a child. Similarly, there is no evidence that when she returned to work on November 14, 2002, she returned part-time rather than full-time because of her medical condition. Indeed, she returned to work without any stated medical opinion or recommendation regarding her ability to work. It was not until January 23, 2003 that Gallagher appears to have been unable to work because of her MS.

Because Liberty's decision denying LTD benefits was not arbitrary and capricious, it must be upheld. Accordingly, Liberty's motion for summary judgment is granted and Gallagher's motion for summary judgment is denied.

## CONCLUSION

For the above reasons, defendant Liberty's motion for summary judgment is granted and plaintiff Gallagher's cross-motion is denied. The Clerk of Court is directed to enter judgment for defendant and to close the file in this action.

SO ORDERED.

_____/s/_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
September 28, 2007